(June 8, 1915.)

## E. I. THERIAULT, Respondent, v. THE CALIFORNIA INSURANCE COMPANY OF SAN FRANCISCO, a Corporation, Appellant.

### [149 Pac. 719.]

FIRE INSURANCE—"WATCHMAN CLAUSE"—PROOF OF LOSS—WAIVER—
MISCONDUCT OF COUNSEL.

1. When the insured had employed two competent watchmen and, in good faith, instructed them to carefully watch the property and to guard against fire, both by day and by night, the condition of the "watchman clause" in the policy was fully complied with on the part of the insured.

2. Regardless of the clause in a policy that no officer, agent or other representative of the insurance company shall have the power to waive any of its provisions or conditions, where other proofs than those required in the policy are accepted by an agent, authorized to adjust a loss, the company will be deemed to have waived the provisions of the policy fixing the manner of making proof of loss.

3. A judgment should never be reversed by reason of misconduct of counsel at the trial, unless the appellate court is of the opinion such misconduct had prevailing influence upon the jury to the detriment of appellant.

APPEAL from the District Court of the First Judicial District for Shoshone County. Hon. William W. Woods, Judge.

Action upon fire insurance policy. Judgment for plaintiff. *Affirmed.*

James A. Wayne, for Appellant.

"Inasmuch as an insurance adjuster has express authority to demand proofs of loss and to participate in an adjustment, his acts frequently give rise to an implied waiver from compelling the furnishing of such proofs or proceeding to enter into the business of adjustment when the insurer has knowledge of a right to forfeit the policy." (19 Cyc. 783; *Dou-*

*ville v. Pacific Coast Casualty Co.*, 25 Ida. 396, 138 Pac. 506;
*Minneapolis Fire & Marine Mut. Ins. Co. v. Fultz,* 72 Ark.
365, 80 S. W. 576; *Stevens v. Citizens' Ins. Co.*, 69 Iowa, 658,
29 N. W. 769; *Prussian Nat. Ins. Co. v. Peterson*, 30 Ind.
App. 289, 64 N. E. 102; *Germania Fire Ins. Co. v. Pitcher,*
160 Ind. 392, 64 N. E. 921, 66 N. E. 1003; *Brock v. Des Moines
Ins. Co.*, 106 Iowa, 30, 75 N. W. 683.)

The provision of the policy that only a specific agreement
indorsed thereon shall be construed as a waiver of any con-
dition, and that "the agent" of the insuring company has
no authority to waive any condition, does not preclude the
company's adjuster from waiving a condition requiring the
insured to furnish proof of loss. (*Heusinkveld v. St. Paul
Fire etc. Ins. Co.*, 106 Iowa, 229, 76 N. W. 696.) The ad-
juster also has the authority to waive proof of loss. (*Hel-
vetia Swiss Fire Ins. Co. v. Edward P. Allis Co.*, 11 Colo.
App. 264, 53 Pac. 242; *California Ins. Co. v. Gracey,* 15 Colo.
70, 22 Am. St. 376, 24 Pac. 577; *Liverpool, London & Globe
Ins. Co. v. Tillis,* 110 Ala. 201, 17 So. 672; *Slater v. Capital
Ins. Co.*, 89 Iowa, 628, 57 N. W. 422, 23 L. R. A. 181; *Union
Mut. etc. Ins. Co. v. Wilkinson,* 13 Wall. (U. S.) 222, 20 L. ed.
617.)

If the insured uses reasonable care and due diligence in
employing competent watchmen, properly instructs them, and
uses due care to see that continuous watch is kept, he com-
plies with the terms of the policy. (*McGannon v. Michigan
Millers' Mutual Fire Ins. Co.*, 127 Mich. 636, 89 Am. St. 501,
87 N. W. 61, 54 L. R. A. 739; *Burlington Fire Ins Co. v. Coff-
man,* 13 Tex. Civ. 439, 35 S. W. 406; *Hanover Fire Ins. Co.
v. Gustin,* 40 Neb. 828, 59 N. W. 375; *Kansas Mill Owners'
etc. Ins. Co. v. Metcalf,* 59 Kan. 383, 53 Pac. 68; *Sierra M. S.
& M. Co. v. Hartford Fire Ins. Co.*, 76 Cal. 235, 18 Pac. 267;
*McGannon v. Millers' Nat. Ins. Co.*, 171 Mo. 143, 94 Am. St.
778, 71 S. W. 160; *Mannheim Ins. Co. v. Clarke & Co.* (Tex.
Civ.), 157 S. W. 291; *Phoenix Assur. Co. v. Coffman,* 10 Tex.
Civ. 631, 32 S. W. 810.)

John P. Gray, for Respondent.

The fact that the very employment of these watchmen by the respondent required them to work at a place from which the mining plant was not visible, together with the small remuneration promised them for their services as watchmen,— entirely insufficient to justify them in keeping a continuous watch at the property, and entirely insufficient to justify respondent in thinking that such men would keep a continuous watch at the property,—shows clearly that there was no *bona fide* effort made on the part of respondent to comply with the watchman clause of this policy, and was sufficient to preclude a recovery in this case. (*Shoshone Concentrating Co. v. Hamburg-Bremen Fire Ins. Co.,* 64 Wash. 638, 117 Pac. 500; *Rankin v. Amazon Ins. Co.,* 3 Cal. Unrep. 330, 25 Pac. 260, 89 Cal. 203, 23 Am. St. 460, 26 Pac. 872; *Wenzel v. Commercial Ins. Co.,* 67 Cal. 438, 7 Pac. 817; *McKenzie v. Scottish Union etc. Ins. Co.,* 112 Cal. 548, 44 Pac. 922; *Kentucky Vermillion M. & C. Co. v. Norwich Union Fire Ins. Co.,* 146 Fed. 695, 77 C. C. A. 121; *Ripley v. Aetna Fire Ins. Co.,* 30 N. Y. 136, 86 Am. Dec. 362; *First Nat. Bank v. President etc. Ins. Co.,* 50 N. Y. 45; *Blumer v. Phoenix Ins. Co.,* 45 Wis. 622.)

MORGAN, J.—On July 25, 1913, appellant, in consideration of $45, issued and delivered to respondent its certain policy of fire insurance in the sum of $1,500, whereby it insured for a period of one year a certain building together with mining and power machinery, tools, equipment, household goods and supplies therein contained, being the property of respondent. Another policy in the sum of $1,500 was written by the Springfield Fire and Marine Insurance Company of Springfield upon the same property, and these policies were so drawn that the loss, if any occurred, would be apportioned between the companies. On the 23d day of August, 1913, the combustible portion of the insured property was destroyed, and the incombustible portion was more or less damaged, by fire.

An action upon the policy in this case was commenced and it was alleged in the complaint that respondent's loss, due to the destruction of the property covered by the two policies, amounted to $2,737.30.   Judgment was prayed for against the appellant in the sum of $1,368.65 and the trial resulted in a verdict and judgment in favor of respondent and against appellant in the sum of $1,258.23, from which judgment this appeal has been prosecuted.

The assignment of errors contains twenty-four specifications, which may be grouped under four heads:

1. The action of the court in denying the motion for a nonsuit and in denying the motion for a directed verdict, which motions were made upon the grounds that the provisions of the policy with reference to keeping a watchman upon duty and with reference to rendering written and verified proof of loss within sixty days had not been complied with by respondent.

2. The action of the court in giving certain instructions to the jury relative to waiver of notice and verified proof of loss, upon the ground that respondent, as contended by appellant, relied upon a compliance with the provisions of the policy and not upon a waiver thereof.

3. The action of the court in instructing the jury relative to the watchman clause in the policy, it being contended by the appellant that the court misdirected the jury as to the law applicable thereto.

4. The action of the court in permitting counsel for respondent to make remarks in the presence of the jury which, it is contended by appellant, were prejudicial to its rights and amounted to misconduct upon the part of respondent's counsel.

The respondent is the owner of a mine in the operation of which the insured property was used.   A few days before the fire work at the mine and power-house was suspended and respondent went to his home at Avery, Idaho, about eight miles distant from the property in question.   Before going he employed two men, Pressie and Snyder, to act as watchmen, agreed to pay them a dollar a day each for their services

in that behalf, and instructed them to keep continual watch and to be very careful in regard to fire. There was a quantity of debris in the tunnel of the mine and respondent also employed Pressie and Snyder to remove it, agreeing to pay them the sum of $10 for that work.

The insured property was located about 300 feet from the portal of the tunnel and about 1,000 feet from the cabins where the men lived and could not be seen either from the tunnel or the cabins. The fire occurred about noon while the men were at their cabins at dinner.

The policy contains the following clause:

"It is warranted by the insured that whenever any of the following named parts of the plant described in this policy, to wit: power-house, is idle or not in operation from any cause whatsoever, competent watchmen shall be employed and due diligence used to keep a continuous watch both day and night in and immediately about said part of the plant. If any of the above-named parts is idle or not in operation for a period of more than thirty (30) days without the written consent of this company, this policy shall be void."

It is not contended by appellant that the men who were employed as watchmen were incompetent, but it is earnestly urged that their employment to clean out the tunnel was inconsistent with their employment as watchmen; that they could not fulfill their contract to remove the debris from the tunnel and continuously watch the insured property. The testimony does not bear out this contention. The work in the tunnel was not of such a nature as to require the presence of both men (the testimony shows that the material was removed with a wheelbarrow); neither was the job of such magnitude as to require the absence of either of them from the insured property for a great length of time. Snyder testified on cross-examination as follows:

"Q. How many days after Mr. Theriault left did you and Mr. Pressie work together in the tunnel?

"A. Oh, just as it happened; might work there an hour or so, you know, kept fussing around, not hired—we could take

our time.   We could have taken it out in a day working the four hours.''

Numerous decisions have been cited by both appellant and respondent to assist the court in construing what is known as the ''watchman clause'' in a policy of insurance.   While there appears to be considerable conflict of authority upon this point, a careful examination of the decisions will demonstrate that the conflict is more apparent than real and that the question presented is one of fact rather than of law.   In the case of *Rankin v. Amazon Ins. Co.*, 89 Cal. 203, 23 Am. St. 460, 26 Pac. 872, cited by appellant, wherein it was held that the requirements of the ''watchman clause'' in an insurance policy had not been complied with, the court said:

''It is not a case of mere negligence.   If a loss is occasioned by the mere fault or negligence of the watchman, unaffected by fraud or design on the part of the insured, it is within the protection of the policy; but, to entitle the insured to recover, it must appear that he has in good faith employed a watchman to perform the duties required by the terms of the warranty.''

In case of *McGannon v. Millers' Nat. Ins. Co.*, 171 Mo. 143, 94 Am. St. 778, 71 S. W. 160, it is said:

''Under the contract in question, did the insured warrant that the watchman would never neglect his duty?   It is no defense to a suit on a fire policy that the fire resulted from the negligence of the insured.   Negligence or carelessness is one of the risks insured against, and negligence of the watchman is, in fact, all that can be made out of this point.''

The court, in case of *Burlington Fire Ins. Co. v. Coffman*, 13 Tex. Civ. 439, 35 S. W. 406, said:

''Upon very plain principles, the courts, while requiring a strict compliance with a warranty in insurance contracts, will not exact performance beyond its terms.   What was required in this instance was that the insured should keep a watchman on duty upon the premises at night.   The agreement was complied with when he employed and kept such a servant upon the premises as a night watchman, provided he exercised reasonable care in the selection and retention of the

person for that employment. . . . . A failure to comply with
the provisions would, we think, have existed, if it had been
shown that the insured had notice of any unfitness of the
watchman, or had not observed ordinary care in employing
and keeping him." (See, also, *Sierra M., S. & M. Co. v.
Hartford Fire Ins. Co.,* 76 Cal. 235, 18 Pac. 267; *McGannon
v. Michigan Millers' Mutual Fire Ins. Co.,* 127 Mich. 636, 89
Am. St. 501, 87 N. W. 61, 54 L. R. A. 739; *Kansas Mill Own-
ers & Mfgs. Mut. Fire Ins. Co. v. Metcalf,* 59 Kan. 383, 53
Pac. 68; *Hanover Fire Ins. Co. v. Gustin,* 40 Neb. 828, 59
N. W. 375; *Phoenix Assur. Co. v. Coffman,* 10 Tex. Civ. 631,
32 S. W. 810.)

The jury was amply justified in finding from the evidence
in this case that respondent, in good faith, employed two com-
petent watchmen and instructed them to carefully watch the
property and guard against fire, both by day and by night,
and that their other employment was not of such a nature
as to interfere with the full and complete discharge of their
duties in that behalf. Having done this the condition of
the "watchman clause" in the policy was complied with on
respondent's part.

The contention of counsel for appellant that the court erred
in instructing the jury relative to waiver of notice and veri-
fied proof of loss for the reason that respondent relied upon
a compliance rather than upon a waiver of the provisions of
the policy with respect thereto, also that the adjuster was
not authorized to waive the requirements of the policy rela-
tive to notice and proof of loss, does not appear to us to be
meritorious.

In paragraph 10 of the complaint it is alleged, after stat-
ing that the respondent made out an inventory of the prop-
erty which was destroyed by fire and delivered it to one
Partridge, who was the agent and adjuster and officer of ap-
pellant, that after Partridge had examined pictures of the
buildings and machinery and had viewed the ruins of the
property where the fire occurred, he, the respondent, inquired
of Partridge whether there were any other or further docu-
ments or papers which he should prepare or any other or

further notices which he should give or anything which he should do in addition to what he had already done in connection with making proof of loss, and it is further alleged: "The said Partridge thereupon stated that the plaintiff need not give any other or further notice or proof of loss and that the documents and papers and notices which the plaintiff had already given were ample and sufficient and thereupon expressly waived to this plaintiff the giving of any other or further notice of proof of loss, and that the notice and proof already furnished was all that was necessary and was in itself sufficient. . . . . " While there is conflict in the evidence as to what took place between respondent and the adjuster, there is sufficient testimony to fully sustain the allegations of said tenth paragraph of the complaint.

The policy contains the usual provision that no officer, agent or other representative of the insurance company shall have power to waive any of its provisions or conditions, and provides that the insured "within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and all others in the property; the cash value of each item thereof and the amount of loss therein; all encumbrances thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all the descriptions and schedules in all policies; and changes in the title, use, occupation, location, possession, or exposure of said property since the issuing of this policy; by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of fire. . . . . "

Regardless of the clause in a policy that no officer, agent or other representative of the insurance company shall have power to waive any of its provisions or conditions, where other proofs than those required in the policy are accepted by an agent, authorized to adjust a loss, the company will be deemed to have waived the provisions of the policy fixing the manner of making proof of loss.

This court said in the case of *Southern Idaho Conference Assn. of Adventists v. Hartford Fire Ins. Co.,* 26 Ida. 712, 145 Pac. 502, as follows:

"The record shows that the proof of loss was not made within sixty days after the fire, and the question will be presented on a retrial as to whether the failure to make such proof precludes a recovery in this case. The evidence offered showing or tending to show a waiver by the company of making the proof of loss within the sixty days ought to be received on the trial."

In case of *Queen of Arkansas Ins. Co. v. Laster,* 108 Ark. 261, 156 S. W. 848, it was said:

"When appellant's adjuster, in response to appellee's inquiry, said that he had 'all the proof he wanted,' this was a waiver of any further proof of loss on the part of appellant, notwithstanding the nonwaiver agreement. It was equivalent to saying to the appellee that appellant was satisfied as to his loss and had all the information pertaining thereto that appellant desired."

In case of *Ohio Farmers' Ins. Co. v. Glaze* (Ind. App.), 101 N. E. 734, it is said:

"A stipulation in a policy that 'no agent has power to waive any condition of this contract unless by written indorsement thereon' refers to conditions essential to make the contract obligatory and binding between the parties in the first instance, and to its continuing force and obligation till loss occurs, but does not refer to stipulations requiring the assured to make proof of loss in a special manner, and such stipulations may be waived by an agent without indorsement. . . . .

"Although an insurance policy on its face prohibits any agent from waiving any of its conditions where other proofs than those required in the policy are accepted by an agent of the company, duly authorized to act with reference to that subject, the company will be deemed to have waived the proof required by the policy." (See, also, *Stevens v. Citizens' Ins. Co.,* 69 Iowa, 658, 29 N. W. 769; *Prussian Nat. Ins. Co. v. Peterson,* 30 Ind. App. 289, 64 N. E. 102; *Germania Fire Ins.*

*Co. v. Pitcher,* 160 Ind. 392, 64 N. E. 921, 66 N. E. 1003; *Brock v. Des Moines Ins. Co.,* 106 Iowa, 30, 75 N. W. 683; *Minneapolis Fire & Marine Mut. Ins. Co. v. Fultz,* 72 Ark. 365, 80 S. W. 576; *Hanover Fire Ins. Co. v. Gustin, supra.*)

The action of the trial court in permitting counsel for respondent to make certain remarks in the presence of the jury is assigned as error, and it is contended that these remarks were prejudicial to the rights of appellant and amounted to misconduct upon the part of respondent's counsel. A careful examination of the record has convinced us that the conduct of counsel complained of did not prejudice the cause of appellant in the minds of the jurors. While judgments have been reversed by reason of the misconduct of counsel at the trial, this should never be done unless the appellate court is of the opinion such misconduct had prevailing influence upon the jury to the detriment of appellant.

We find no error in the record and the judgment is therefore affirmed. Costs are awarded to respondent.

Sullivan, C. J., and Budge, J., concur.