Argued May 8, decided May 28, 1912.

## FARLEY *v.* WESTERN ASSURANCE CO.

[124 Pac. 199.]

INSURANCE—FIRE INSURANCE—PROOF OF LOSS—ESTOPPEL.

A fire policy provided that no officer or representative of the company should have power to waive any provision of the policy, except such as may be the subject of agreement indorsed thereon; and the policy also provided for sworn proof of loss. After the fire, the company's agent and adjuster, who had sole authority to investigate and settle the loss, examined insured as to the cause of the fire, and received a schedule of goods destroyed or injured, and the agent finally agreed with plaintiff's attorney to send a check, within 60 days, for a certain amount, if plaintiff agreed to accept that sum as the value of the goods. The schedule of goods was upon a printed form, which recited that it should be considered as the preliminary presentation of the claim, and not the final proof, as provided for in the policy. Insured supposed that the whole matter was settled, and made no further proof of loss. Held, that the company was estopped from defending an action on the policy on the ground that insured did not make proof of loss within the required time.

From Baker: WILLIAM SMITH, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is an action by J. H. Farley and F. W. Mogan, co-partners doing business under the firm name and style of Farley & Mogan, against the Western Assurance Company.

At the commencement of this action, plaintiffs were undertakers, doing business at Baker City, and held a policy of insurance upon their stock of merchandise to the amount of $2,700 in defendant company. The policy is in the usual form, containing all the usual exceptions, conditions, and restrictions. Among other stipulations is the following:

"No officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto and as to such conditions and provisions, no officer, agent, or representative shall have power to be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto."

There is also a provision that when the amount of loss has been determined the sum for which the company is liable shall be payable 60 days after "due notice, ascertainment, estimate and satisfactory proof of the loss have been received by the company in accordance with the terms of this policy." There is also the following condition:

"If fire occur, the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and the undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon; and, within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company,

signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon; all encumbrances (incumbrances) thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all the descriptions and schedules in all policies; any change in the title, use, occupation, location, possession · or exposures of said property since the issuing of this policy; by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of fire; and shall furnish, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged; and shall also, if required, furnish a certificate of the magistrate or notary public (not interested in the claim as a creditor or otherwise not [nor] related to the insured) living nearest the place of fire, stating that he has examined the circumstances and believes the insured has honestly sustained loss to the amount that such magistrate or notary public shall certify. The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to all examinations under oath by any person named by this company, and subscribe the same; and as often as required, shall produce for examination, all books of accounts (account), bills, invoices, and other vouchers, or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company or its representatives, and shall permit copies thereof to be made. In the event of disagreement as to the amount of loss, thᵣ same shall,, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company, each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraisers respect-

ively selected by them and shall bear equally the expenses of the appraisal and umpire. This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirements, act or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required."

A fire occurred, resulting in a total loss, which the evidence indicates was at least equal to the amount of insurance. Thereupon the company sent its agent and adjuster, who in the language of an affidavit filed by defendant, was "the sole and exclusive acting agent authorized by defendant to investigate, adjust, and settle the loss, if any incurred, by plaintiffs under their policy." This agent met with Farley, examined him as to the cause of the fire, received from him and his attorney in fact a schedule of goods destroyed or injured, and, as the parties were unable to agree as to the values, the agent finally agreed with plaintiffs' attorney, Mr. Barton, that, if plaintiffs would accept the valuation of $1,401.40, which he placed upon the goods destroyed or injured, he would accept that, and that the company would send a check for the amount within 60 days. The schedule was upon a printed form, which contained, among other things, substantially these words: "* * This to be considered as our preliminary presentation of said claim and not the final proof as provided for in said policy of insurance." Supposing the whole matter adjusted and settled, plaintiffs made no further proof. The company did not pay the loss and now defends on the ground that plaintiffs did not, within the time required, make the proofs required by the policy.

AFFIRMED.

For appellants there was a brief over the names of *Mr. J. F. Riley* and *Mr. Emmett Callahan,* with an oral agrument by *Mr. Callahan.*

For respondents there was a brief over the names of *Mr. Andrew N. Soliss, Mr. Ralph W. Eckhardt* and *Mr. John L. Rand,* with an oral argument by *Mr. Soliss.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

The defense is unconscionable. Defendant sent its agent out to adjust and settle the loss, and he did settle the amount of it, and agreed that his company should pay it. He was not a mere adjustee or investigator. He had authority to settle, as defendant admits. Defendant cannot send out an agent clothed with such authority and trick unsuspecting claimants into a reliance on his representations, and then repudiate them by attempting to hide behind obscure clauses in the policy. There is no question as to the amount of the loss, and no serious question as to the representations made by defendant's agent; and, if defendant had required further formal proof, it should, in common honesty, have notified plaintiffs to furnish them.

It is claimed that the complaint does not state facts sufficient to constitute a cause of action, in that it fails to state that plaintiffs were the owners of the stock of goods at the time they were burned; but, in our opinion, this fact is sufficiently stated. In clause 3 of the complaint, it is alleged that plaintiffs were the owners of the stock of goods when they were insured; and in clause 4 it is stated "that on the 5th day of December, 1909, said stock of goods *so owned* by plaintiffs was burned and destroyed by fire." The parties went to trial on these pleadings, and there was no objection to any evidence offered by plaintiffs. We think the allegation of ownership was sufficient, even upon demurrer. It is certainly good after verdict.

The judgment is affirmed.          AFFIRMED.